IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RANDY D. HOHNSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 07-6139-AC |
| v. | ) | |
| | ) | FINDINGS AND |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | RECOMMENDATION |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

ACOSTA, Magistrate Judge,

Plaintiff Randy Hohnstein ("Hohnstein") challenges the Commissioner's decision denying

his application for disability insurance benefits under Title II of the Social Security Act.  This court

has jurisdiction under 42 U.S.C. § 405(g).  For the reasons set forth below, the Commissioner's

decision should be AFFIRMED.

The court reviews the Commissioner's decision to ensure that proper legal standards were

applied and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g);

*Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).  The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. § 404.1520.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Hohnstein asserts two challenges to the ALJ's decision to deny his benefits application.  First, he contends the ALJ failed to properly identify his severe impairments at step two of the process.  Second, he contends the ALJ failed to evaluate his testimony properly when assessing his residual functional capacity ("RFC").  As a result, Hohnstein argues, the ALJ's RFC assessment did not accurately reflect all of his functional limitations and led the ALJ to erroneously conclude that he remains capable of performing his past work.

A.    **Severe Impairments**

Hohnstein contends the ALJ erred at step two by finding his mental impairments and obesity non-severe.  At step two, the ALJ must determine whether the claimant has any combination of impairments which significantly limits his ability to do basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have any such impairment or combination of impairments, the ALJ must find him not disabled and terminate the disability determination process at step two.  20 C.F.R. § 404.1520(a)(4)(ii).

In the present case, the ALJ resolved step two in Hohnstein's favor, finding he had impairments which surmounted the step-two hurdle.  Admin. R. 17, 21.  The ALJ properly continued the sequential decision-making process until reaching a determination at step four.  Any error in designating specific impairments severe did not prejudice Hohnstein at step two, because step two was resolved in his favor.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (Any error in omitting obesity from list of severe impairments at step two harmless where step two was resolved

in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list bursitis as severe at step two harmless error where ALJ considered the functional limitations posed by bursitis).

Hohnstein's argument may be construed as a challenge to the ALJ's RFC assessment. Once a claimant has surmounted step two by showing any severe impairment, the ALJ must consider the functional limitations imposed by all medically determinable impairments, including those found non-severe at step two. 20 C.F.R. § 404.1523. Accordingly, the ALJ was required to evaluate any functional limitations imposed by Hohnstein's depression, anxiety, and obesity as part of the RFC assessment.

The ALJ acknowledged Hohnstein's obesity, but found no evidence of functional limitations attributable to that diagnosis. Admin. R. 17. Hohnstein did not allege impairment from obesity in his application disability reports, his written statements, or his testimony. He did not report functional limitations from obesity to his treating physicians. Although treating sources noted Hohnstein's obesity, none indicated functional limitations or recommended that he lose weight to improve function. The ALJ could reasonably infer from the record as a whole that Hohnstein's obesity did not impose functional limitations.

Hohnstein relies on the report of Robert Irwin, M.D., who performed a consultative evaluation in May 2001. Dr. Irwin noted that Hohnstein's weight "may further limit his ability to ambulate longer." *Id.* at 171. Dr. Irwin's statement is too speculative and vague to establish functional impairment from obesity. It suggests only a potential limitation without indicating its nature, frequency, intensity, or severity. The ALJ considered Dr. Irwin's report, but relied instead on the factors described in the previous paragraph and concluded the record as a whole did not support significant functional limitations from obesity. *Id.* at 17.

3 - FINDINGS AND RECOMMENDATION

The ALJ assessed Hohnstein's mental impairments and concluded they did not persist long enough to satisfy the duration requirement.  *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."); 20 C.F.R. § 404.1509 (duration requirement defined as "a continuous period of at least 12 months").

This finding is supported by substantial evidence.  Hohnstein did not allege depression or anxiety in his disability report in July 2001.  Admin. R. 99.  He first reported symptoms of depression in December 2001.  *Id.* at 233.  He was diagnosed with an adjustment disorder associated with marital difficulties and separation from his wife.  *Id.* at 229-32, 236.  He told his primary care physician he received good relief from Wellbutrin, and obtained a prescription.  *Id.* at 193.  He started counseling but had poor attendance and participated in only five sessions during January and February 2002.  *Id.* at 228-32.  Hohnstein terminated therapy and did not pursue mental health treatment thereafter.  He did not allege depression or anxiety in his reconsideration disability report in March 2002.  *Id.* at 149.

In April 2002, Bill Hennings, Ph.D., reviewed the entire case record and found no evidence of a severe mental impairment.  *Id.* at 220.  He noted that Hohnstein did not describe mental deficits to his treating physicians and reported daily activities that were inconsistent with severe psychological limitations.  *Id.*

Hohnstein concedes adjustment disorders generally relate to a specific situation and ordinarily resolve within six months.  Pl.'s Br. 10.  He argues such disorders may persist longer in cases involving chronic stressors, which he claims are present in his case.  *Id.*  Although

theoretically appealing, this argument fails because Hohnstein did not produce evidence of functional limitations stemming from mental impairments, except for his subjective reports of short-term irritability and moodiness around the time of his marital break-up. Thus, he failed to produce evidence of functional limitations persisting for 12 months.

Hohnstein contends his mental health treatment did not persist for 12 months only because he lost his insurance coverage through the Oregon Health Plan.  The ALJ was not persuaded, however, because Hohnstein continued to obtain treatment during 2002 and 2003 for other ailments, including sore throat, an episode of insomnia, hip pain, hemorrhoids, and earache.  Admin. R. 237-41.  The ALJ reasonably inferred that Hohnstein had sufficient resources to obtain medical care when he needed it.  *Id.* at 20, 272.  She could reasonably conclude that Hohnstein would have continued mental health treatment if his depression and anxiety had continued to cause debilitating symptoms as he now claims.

Hohnstein urges the court to remand for further development of the record regarding his mental impairment.  In Social Security disability cases, "the ALJ has a duty to assist in developing the record."  *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir. 2001) (quoting *Armstrong v. Comm'r of the Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir. 1998)).  The ALJ's duty to conduct an appropriate inquiry is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996).

The record does not contain conflicting or ambiguous evidence regarding Hohnstein's mental condition.  Nor does Hohnstein's failure to produce evidence of functional limitations render the

record inadequate to reach a determination.  If a claimant fails to produce medical evidence to substantiate his allegations, it is appropriate for the ALJ to reach a determination that he is not disabled.  *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005); SSR 96-4p, 1996 WL 374187 at *1-2.  A claimant's statement as to his symptoms is not sufficient.  *See* 42 U.S.C. § 423(d)(5)(A) ("There must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities.").

Hohnstein produced only his subjective statements to health providers, describing depression symptoms as a result of relationship difficulties.  These statements were made over a brief period and his symptoms were limited to irritability and moodiness.  Admin. R. 193-94, 233-36.  The ALJ found the record adequate to conclude Hohnstein's adjustment disorder and symptoms of depression resolved well within the 12-month duration requirement.  The ALJ's finding is supported by inferences reasonably drawn from the record.  Accordingly, even if the evidence also supports the interpretation Hohnstein urges, the court must defer to the Commissioner's decision.  *Batson,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir 1995).

In summary, Hohnstein's challenge to the ALJ's determination at step two fails because step two was resolved in his favor.  To the extent Hohnstein's step-two challenge is construed as a challenge to the ALJ's RFC assessment, it fails because Hohnstein did not produce evidence of functional limitations attributable to obesity or persistent ongoing limitations attributable to depression or anxiety.

**B.**    **RFC Assessment**

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by his impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 * 5. Hohnstein challenges the present RFC assessment on the grounds that the ALJ improperly rejected his testimony without articulating legally sufficient reasons.

Hohnstein testified he has pain in his left hip. After a day of work as a disk jockey, he would get shooting pain in the hip. He would spend the next day with his legs elevated and his prosthesis removed. Admin. R. 258-59. He frequently missed work due to excess pain in his hips. *Id.* at 260. If he worked several days in a row, he would not be able to get out of bed due to pain in the hips. *Id.* at 271, 276. Hohnstein was supposed to schedule surgery to treat failing skin grafts on the stump of his amputated left leg two years before the hearing. He testified he did not do so because he lost his health insurance at about that time. *Id.* at 268.

Hohnstein testified that he has difficulty staying focused when he reads. *Id.* at 263. If he had a sedentary job and could change positions at will, he would still have problems with attention and focus. He would drift off and daydream. *Id.* at 264.

The ALJ accepted that Hohnstein suffers from pain which limits him to sedentary work excluding the use of ladders or scaffolds and providing the option to sit or stand at will. *Id.* at 18. The ALJ gave some weight to Hohnstein's statements about the extent of his limitations, as shown by her determination that Hohnstein is more limited than indicated by the agency reviewing medical

consultants. *Id.* The ALJ rejected Hohnstein's assertions that he has functional limitations in excess of those in the RFC assessment and cannot perform any kind of substantial gainful activity.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen*, 80 F.3d at 1281-82; *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). There is no dispute about the first stage.

At the second stage of the credibility analysis, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283. The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id.*; SSR 96-7p, 1996 WL 374186. Here the ALJ considered these factors and made specific findings to support her credibility determination.

The ALJ concluded the objective medical evidence did not support the extreme functional limitations Hohnstein described in his testimony. At a consultative examination on May 24, 2001, Hohnstein did not demonstrate pain behavior, although he reported some discomfort in his left thigh with ambulation. The skin grafts on his stump appeared good and Dr. Irwin opined Hohnstein had made a successful adaptation to his prosthesis. He had normal muscle tone and bulk in the upper

8 - FINDINGS AND RECOMMENDATION

extremities and right leg.  Admin. R. 171.  Hohnstein allegedly became disabled one week after this generally benign examination.  *Id.* at 68.

Shortly after the alleged onset of disability, Hohnstein's saw his primary care physician, David Greenberg, M.D.  Hohnstein's only symptom was numbness that came and went over the lateral aspect of the left thigh in the area of the prosthesis.  Dr. Greenberg's physical examination revealed no abnormal findings.  *Id.* at 199.  In October 2001, Hohnstein returned to Dr. Greenberg reporting pain and a sensation that the skin was thinning in the area of his skin grafts.  Dr. Greenberg treated a fungal infection on the skin of the thigh under the prosthesis and referred Hohnstein to Thomas Dreyer, M.D., to evaluate the condition of his skin grafts.  *Id.* at 195-98.

On November 5, 2001, Dr. Dreyer found two areas of irritation from the prosthesis and a split-thickness skin graft which had broken down in the past.  Dr. Dreyer recommended surgery to revise the stump and alleviate future skin breakdown.  *Id.* at 190.  Hohnstein did not pursue the recommended surgery.

When Hohnstein saw Dr. Greenberg on June 25, 2002, his stump was "doing well" and had no skin changes.  *Id.* at 241.  Hohnstein complained of left hip pain associated with a mobile subcutaneous mass which Dr. Greenberg thought might be an avulsed muscle.  Hohnstein demonstrated full range of motion and good strength in the hip.  *Id.* at 240-41.

There are no other objective or clinical findings in the case record.  The ALJ could reasonably expect that if Hohnstein had experienced the extreme pain described in his testimony, requiring him to elevate his legs all day and frequently confining him to bed, his reports of such pain and corroborating objective findings would have been reflected in his medical records.

9 - FINDINGS AND RECOMMENDATION

The ALJ also relied on Hohnstein's treatment history.  She noted Hohnstein did not require frequent or urgent care such as would be typical of conditions causing debilitating pain and extreme functional limitations.  Hohnstein did not follow-up with the surgical procedure Dr. Dreyer recommended, although the procedure was expected to alleviate any pain symptoms associated with his prosthesis.  Contrary to his testimony that he experiences disabling hip pain, Hohnstein did not seek prescription pain medication, except when he experienced an earache in October 2003.  *Id.* at 237-38.

Hohnstein alleges his failure to follow Dr. Dreyer's recommendation should be excused because he lost his insurance coverage.  As described previously, however, Hohnstein obtained medical care for other ailments during the relevant time.  Hohnstein's explanation does not account for his ability to obtain treatment when needed for minor ailments, but not for the conditions that are allegedly disabling him.  Nor does it explain his failure to inquire about pain management from any treating source.

The ALJ also considered the opinions of medical providers and state agency reviewing consultants.  In December 2001, Dr. Dreyer opined that Hohnstein remained capable of sedentary work, although he would need three to four weeks to recover if he followed-through with stump revision surgery as recommended.  *Id.* at 189.  The state agency medical consultants did not examine Hohnstein, but reviewed all of his medical records.  Their opinion was generally consistent with the ALJ's RFC assessment.  *Id.* at 226.

In addition to the minimal objective findings, sparse treatment record and medical opinions, the ALJ considered Hohnstein's recent work history.  Hohnstein alleged he became unable to work in June 2001, but worked a regular part-time schedule as a disk jockey from 1995 until shortly

before the hearing in February 2004.  He stopped working when new owners at his place of employment  scheduled him to work shifts when he needed to watch his children.  *Id.* at 250-51. The ALJ could draw an adverse inference as to credibility from this evidence that Hohnstein did not stop working due to functional limitations from his medical condition.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (Sufficient reasons for disregarding subjective pain testimony include stopping work due to layoff rather than for medical reasons, failure to seek care at the time claimant stopped work, and failure to seek treatment despite complaints of severe pain).

The ALJ acknowledged that Hohnstein's part-time work did not meet the level of substantial gainful activity.  Thus, his ability to perform this past work does not, by itself, show that he retains the capacity to do it on a full-time basis.  Hohnstein did not tell his employer or medical providers that he was incapable of working more hours or additional shifts.  The ALJ could rationally conclude that Hohnstein limited himself to part-time work so that he could provide care for his children while his wife was working.

The ALJ found Hohnstein's testimony inconsistent with his own prior statements and those of the third-party lay witness.  Hohnstein testified that he is disabled primarily by hip pain beginning in June 2001.  In July 2001, his only symptom was transitory numbness under his prosthesis. Admin. R. 199.  In October 2001, his primary symptom was pain with a sensation that the skin grafts on his stump were breaking down with an associated tinea infection.  *Id.* at 195-98.  Hohnstein complained of hip pain only in June 2002.  *Id.* at 240-41.

In October 2001, Apryl Morgan provided a third-party questionnaire regarding Hohnstein's regular daily activities.  Ms. Morgan is Hohnstein's sister-in-law.  She reported that Hohnstein was working about five days a week and left the house daily to attend to such activities as errands,

shopping, banking and going to his children's school.  *Id.* at 116, 118, 125-26.  He participated in

typical social activities, such as going out to eat with family and friends.  *Id.* at 116.  He enjoyed

cooking and prepared two healthy balanced meals a day for himself and his family and between-

meal snacks for his children.  *Id.* at 121.  He performed all household chores as needed, including

laundry, dusting, vacuuming, yard work, home repairs and car repairs.  *Id.* at 122.  He needed help

with these tasks only if and when they required him to be up and walking around.  *Id.* at 123.

The ALJ reasonably concluded that the wide range of activities Ms. Morgan described was

not consistent with Hohnstein's testimony.  Ms. Morgan's statement suggested that pain limited

Hohnstein's ability to walk, but did not support significant limitation in activities which do not

require a great deal of walking or standing.  Accordingly, Ms. Morgan's statement contradicts

Hohnstein's testimony that he would be unable to perform even sedentary work.

In conclusion, the ALJ evaluated all of Hohnstein's allegations of limitations and restrictions

in light of all the evidence he presented to support his claim.  The ALJ arrived at conclusions

supported by inferences reasonably drawn from the record as a whole.  The challenges Hohnstein

asserts cannot be sustained.  Accordingly, the court should affirm the Commissioner's decision.  42

U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala*,

53 F.3d at 1039-40.

## **RECOMMENDATION**

Based on the foregoing, the ALJ's decision that Hohnstein did not prove disability and is not

entitled to disability insurance benefits under Title II of the Social Security Act is based on correct

legal standards and supported by substantial evidence.  The Commissioner's decision should be

affirmed.

**<u>SCHEDULING ORDER</u>**

Objections to the Findings and Recommendation, if any, are due May 20, 2008.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed.  Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 6th day of May, 2008.


_____/s/ John V. Acosta_____
John V. Acosta
United States Magistrate Judge